IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DAVDRIN GOFFIN                                                                      PLAINTIFF

v.                                    Case No. 1:15-cv-1040

RANDY PEEK, individually and in his official
capacity as Police Chief for the city of Warren;
CITY OF WARREN; ROBBIE K. ASHCRAFT,
individually and in her official capacity as a law
enforcement officer of the city of Warren;
BRYAN MARTIN, individually and in his official
capacity as mayor for the city of Warren; and
JOHN DOES 1-10                                                                     DEFENDANTS

MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendants. ECF No. 48. Plaintiff has responded. ECF. No. 53. This matter is ripe for the Court's consideration.

BACKGROUND

Davdrin Goffin was shot by police officer Robbie Ashcraft. He brings this action for damages under 42 U.S.C. § 1983 against Ashcraft; Randy Peek, who is the police chief; Bryan Martin, who is the mayor of Warren, Arkansas; and the city of Warren. Goffin alleges an excessive use of force claim against Ashcraft. Plaintiff also brings claims for failure to train and failure to supervise, for violations of his Eighth and Fourteenth Amendment rights, as well as state law claims for outrage, battery, and negligence and for violations of the Arkansas Civil Rights Act. Defendants argue that they are entitled to summary judgment on all claims.

Officers Robbie Ashcraft and Aaron Hines responded to a residential burglary call at the home of Tommy Reddick, Goffin's uncle by marriage. Reddick reported to Ashcraft and Hines that Goffin had come to Reddick's house earlier in the day and told Reddick that he dropped his

gun while running from the police. Reddick stated that Goffin then demanded Reddick's gun but he did not comply with the demand. Reddick further reported that later that same day, while he was away from his home for thirty minutes, Goffin entered Reddick's home through the back window, kicked in his bedroom door, and took two guns (a 9mm pistol with clip and a .38 snub nose pistol), a box of bullets, and a bottle of hydrocodone.[1] Reddick told the officers that Goffin was "out of control."

Ashcraft knew of Goffin from previous dealings with him and knew that Goffin had an active arrest warrant for aggravated robbery at the time Reddick reported the burglary. Ashcraft told Reddick that "we've been looking for [Goffin]," and Reddick responded that they should be ready to fight when they find him.

After Ashcraft took Reddick's statement and as she was preparing to leave Reddick's house, she saw a black truck being driven by a black male drive by the residence. Ashcraft, who had parted ways with Hines, followed the truck to its destination and asked the driver, Dwayne Moore, if he had seen Goffin. Moore reported that Goffin, who smelled of alcohol, had flagged him down and jumped in Moore's truck. Moore told Ashcraft that Goffin asked Moore to take him to the car wash and that, when Moore hesitated, Goffin demanded a ride to the car wash and told Moore that he had two guns. Goffin reportedly pulled out either a 9mm or 40-caliber pistol and then pulled out either a .22 or .38 caliber pistol. Moore told Ashcraft he was afraid that Goffin was going to rob him and that Goffin looked as if he would "take [Moore] out," so he took Goffin to the car wash. Moore also told Ashcraft that Goffin had a gun in each pocket.[2]

---

[1] The Court notes that Goffin questions the truthfulness of Reddick's statements to Ashcraft and Hines; however, as discussed later in this Opinion, these statements are offered to show their effect on Ashcraft and not for their truthfulness.

[2] The Court notes that Goffin questions the truthfulness of Moore's statements to Ashcraft; however, as discussed later in this Opinion, these statements are offered to show their effect on Ashcraft and not for their truthfulness.

After Ashcraft finished taking Moore's statement, Hines called Ashcraft to tell her that Goffin had been seen at a specific body shop. Ashcraft and Hines met at the body shop and walked together toward Goffin's suspected location. They approached a crowd of people standing in and around the parking lot and asked where Goffin was. The body shop owner pointed to the garage door. As they approached the garage door, they heard a voice coming from a car parked by the garage door. Ashcraft saw Goffin sitting in the front passenger seat of the car. Both officers drew their guns and approached the vehicle. Ashcraft walked to the driver's side and Hines to the passenger side. As Hines made it to the front of the car, he holstered his weapon and grabbed his Taser gun. Both Ashcraft and Hines ordered Goffin to show his hands. Hines asked Goffin to keep his hands up and exit the car. Goffin stepped out of the vehicle with his hands slightly raised. Hines moved Goffin to the rear of the car while Ashcraft kept her weapon out. Ashcraft saw something "bumping in [Goffin's] right front pocket."

At the rear of the vehicle, Hines ordered Goffin to put his hands on the trunk of the car while Ashcraft continued to provide lethal cover for Hines. As Hines attempted to handcuff Goffin, he extended his left arm, and attempted to run. According to Goffin, he was patted down by Hines and then Goffin began to run. The fact that a pat down occurred is disputed by Hines and Ashcraft; however, the Court will view this fact in the light most favorable to Goffin and assume the pat down by Hines occurred. It is undisputed that Hines removed nothing from Goffin's pockets.

Goffin attempted to run toward the street near an area where several people were standing. As Goffin was attempting to run, Ashcraft saw his right shoulder raise and could not see Goffin's hands. Ashcraft fired one shot, hitting Goffin's lower back. Hines then handcuffed and searched Goffin, finding a loaded 9mm pistol magazine in Goffin's pocket and a box of bullets in another

3

pocket. The parties dispute in which pocket the loaded magazine was found. Hines states that he found the magazine in Goffin's right front pocket. However, the Court will view this fact in the light most favorable to Goffin, and assume the magazine was in Goffin's back pocket as he states in his deposition. Inside the car, officers found a 9mm pistol and .38 revolver within arms' reach of the seat where Goffin was sitting when he was discovered by Hines and Ashcraft. Goffin was transported to the hospital by ambulance, and he survived the gunshot wound.

SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92

F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

The Court will first consider a threshold evidentiary issue before examining the substance of the summary judgment arguments Plaintiff's claims.

### A. Evidentiary Issue

When supporting or disputing statements of material fact offered to support a motion for summary judgment, the opposing party may object that such a statement is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Goffin argues that several of the facts offered to support Defendants' summary judgment motion are inadmissible hearsay. Specifically, Goffin's objections relate to statements made by witnesses, Reddick and Moore, to Ashcraft and Hines and an audio recording in real time of what Ashcraft heard Reddick say to Goffin on the phone and what he told Hines and Ashcraft about the events that occurred on the day Goffin was shot.[3]

The Court disagrees with Goffin for the following reasons. First, it does not appear that Defendants are offering these statements by witnesses or the audio recording for the truth of the

---

[3] The Court notes that Goffin has not filed a motion to strike the statements or audio recording, although he did object to the conventional filing of the audio recording (ECF No. 58) and stated objections to specific facts offered by Defendants (ECF No. 54).

5

facts stated but rather they are offering them to show their effect on Ashcraft. Thus, the statements and audio recording are not inadmissible hearsay. *See United States v. Wright*, 739 F.3d 1160, 1170 (8th Cir. 2014); *see also Bady v. Murphy-Kjos*, 628 F.3d 1000, 1002-03 (8th Cir. 2011) (holding that information provided to an officer about a suspect is not hearsay when only offered to show "what the officers knew, or thought they knew, at the time of the arrest.").

Second, even if the statements and audio recording were inadmissible hearsay, Defendants can present these items of evidence in an admissible form at trial. "The standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (emphasis in original). Goffin asserts that witness statements and the audio recording are inadmissible hearsay, but he has not shown, nor does he argue, that Defendants cannot present the evidence in a form that would be admissible at trial. Defendants assert that each fact they offer regarding the statements and audio recording could be admissible through witness testimony or introduction of the audio at trial. The Court agrees. Defendants do not rely on evidence that, on its face, presents evidentiary obstacles that would prove insurmountable at trial.

### B. Excessive Force Claim against Ashcraft

Goffin alleges an excessive force claim against Ashcraft in her individual capacity, and she argues that she is entitled to qualified immunity. Qualified immunity "shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016) (citing *Mallak v. City of Baxter*, 823 F.3d 441, 445 (8th Cir. 2016)). In resolving the issue of whether an officer is shielded by qualified immunity, the court must decide whether the facts shown by the plaintiff make out a violation of a constitutional right, and if so, whether that right

was clearly established at the time of the defendant's alleged misconduct. *Vester v. Hallock*, 864 F.3d 884, 886 (8th Cir. 2017).

In claims involving the use of excessive force, the first inquiry is whether the force amounts to a violation of the Fourth Amendment's prohibition against unreasonable seizures. *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012). In making that determination, courts must analyze the claim under the Fourth Amendment's "objective reasonableness" standard. *Malone v. Hinman*, 847 F.3d 949, 952 (8th Cir. 2017) (quoting *Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005)). The standard is well settled in the Eighth Circuit:

> The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation. [*Graham v. Connor*, 490 U.S. 386, 397 (1989)]. [The Court] must consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest. *Id.* at 396. The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others. *See Tennessee v. Garner,* 471 U.S. 1, 11 (1985). [The Court] judge[s] the reasonableness of [an officer's] use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396.

*Loch*, 689 F.3d at 965.

"Once the predicate facts are established, the reasonableness of [an officer's] conduct under the circumstances is a question of law." *Malone*, 847 F.3d at 953 (quoting *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001)).

To defeat the motion for summary judgment on this issue, Goffin needs to present enough evidence to permit a reasonable jury to conclude that Ashcraft's use of force was objectively unreasonable. *See Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001) (citing *Gardner v. Buerger*, 82 F.3d 248, 252 (8th Cir. 1996)). First, Goffin questions the credibility of Ashcraft's statement that she shot Goffin because she feared for her life, and he contends that a question of

7

fact remains as to the "real reason why Ashcraft shot Mr. Goffin." ECF No. 56, p. 20. However, the reasonableness of use of force turns on whether Ashcraft's actions were objectively reasonable in light of the facts and circumstances confronting her, without regard to her subjective intent or motivation. *Loch*, 689 F.3d at 965 (citing *Graham*, 490 U.S. at 397). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397. Thus, the "real reason why Ashcraft shot Mr. Goffin" is of no concern to the Court in its analysis of whether Ashcraft's use of force was objectively reasonable.

Next, Goffin argues that a fact question exists as to whether Ashcraft's use of force was objectively reasonable because Ashcraft knew Goffin was unarmed. Goffin attempts to discredit Ashcraft's statement that she believed Goffin was armed by pointing to the facts that Ashcraft never saw a weapon in Goffin's hand and knew that Hines had patted Goffin down for weapons just before she shot Goffin.

Whether Officer Hines performed a pat down search of Goffin prior to his attempting to run is a disputed fact, but the Court is required to view this fact in the light most favorable to Goffin and assume that the pat down occurred. Nothing was seized from Goffin's pockets as a result of the pat down, and Goffin had a loaded magazine and bullets in his pockets. The fact that Ashcraft knew that a pat down occurred when nothing had yet been seized from Goffin's pockets does not necessarily support a finding that Ashcraft knew Goffin was unarmed or that her conduct was objectively unreasonable.

The undisputed facts are that Ashcraft never saw a weapon in Goffin's hand, but she had been told that Goffin had recently stolen two guns, had two guns in his pockets, and had brandished those guns in demanding that Moore take him to the car wash. Further, it is undisputed that

8

Ashcraft noticed something "bumping" in Goffin's pocket and that Goffin, with his back toward Ashcraft, raised his shoulder as if to reach for a gun.

The fact that a pat down occurred prior to the shooting and the fact that Ashcraft never saw a weapon in Goffin's hands are insufficient to support an inference that Ashcraft is lying about her belief that Goffin had a weapon on him and that she actually knew he was unarmed. These facts are also insufficient to satisfy Goffin's burden of proving that Ashcraft's actions were objectively unreasonable. "An officer is not constitutionally required to wait until he sets eyes upon the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun." *Thompson*, 257 F.3d at 899.

Considering the totality of the circumstances and judging from the perspective of a reasonable officer on the scene, taking into account what Ashcraft believed at that time, the Court concludes that summary judgment is appropriate in this case. Ashcraft had been told that Goffin had stolen two guns and ammunition from Reddick's house. Ashcraft knew Goffin had an outstanding warrant for aggravated robbery and had been told that Goffin was running from the police. Moore told Ashcraft that Goffin had two guns in his pockets and had brandished the two guns as he demanded a ride to the car wash. Ashcraft had reason to believe that Goffin was armed and that a gun could be in his pocket. She could not see Goffin's hands as he attempted to flee and raised his right shoulder, and, thus, her belief that Goffin posed a threat to her safety was objectively reasonable. Further, a reasonable officer could believe that Goffin posed a threat to nearby bystanders as he began to run towards a group of seven or eight people. Goffin admitted that, if he would have continued running, he would have run right into the bystanders. Accordingly, the Court finds that Ashcraft had probable cause to believe that Goffin posed a threat

of serious physical harm to her and others, s*ee Loch*, 689 F.3d at 965, and concludes that Ashcraft's use of force was objectively reasonable.

Because the Court finds that Ashcraft did not infringe Goffin's Fourth Amendment right to be free from unreasonable seizures by using excessive force against him, it follows that Ashcraft is entitled to qualified immunity.

### C. Claims against the City, Chief Peek, and Mayor Martin

Goffin generally alleges, pursuant to 42 U.S.C. § 1983, that the City of Warren, Arkansas, Chief Peek, and Mayor Martin failed to properly supervise or train Ashcraft. Goffin alleges this claim against Chief Peek and Mayor Martin in their individual and official capacities. Any claims against Chief Peek and Mayor Martin in their official capacities are essentially claims against the City of Warren. *See Brockington v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2010) ("A suit against a government actor in his official capacity is treated as a suit against the governmental entity itself"). Therefore, Goffin's official-capacity claims against Chief Peek and Mayor Martin are dismissed as redundant.

#### 1. Chief Peek and Mayor Martin in their Individual Capacities

"[A] supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069 (8th Cir. 1996). However, if a plaintiff has failed to establish that his constitutional rights were violated, he has no § 1983 claim against a defendant sued as a supervisor. *Moore v. City of Deslodge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011); *Thompson*, 257 F.3d at 899 ("The § 1983 claims will not lie against either [the officer and his supervisor] individually or against the city unless plaintiffs can prove an underlying violation of [the suspect's] Fourth Amendment rights."). "A vital element of any

section 1983 claim is a showing that a right secured by the Constitution or a federal law was violated." *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993). In the present case, the Court has found that Ashcraft did not violate Goffin's constitutional rights. Therefore, the claims against her supervisors, Chief Peek and Mayor Martin, must fail.

### 2. City of Warren

The Eighth Circuit has consistently held that a municipality cannot be held liable on either an unconstitutional policy or custom theory or on a failure to train or supervise theory unless a defendant police officer is found liable on an underlying substantive claim. *McCoy v. City of Monticello*, 411 F.3d 920, 922-23 (8th Cir. 2005). In the present case, the Court has found that Ashcraft's use of force was objectively reasonable and that she did not violate Goffin's constitutional rights. Therefore, Goffin's claims against the City of Warren, Arkansas, must fail.

### D. Eighth Amendment and Fourteenth Amendment

In addition to his Fourth Amendment claim, Goffin claims a violation of his Eighth Amendment and Fourteenth Amendment rights. The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest, *Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011), while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences. *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) (citing *Whitley v. Albers*, 475 U.S. 312, 318-22 (1986)). Because Goffin's excessive-force claim arises in the context of his arrest, it is most properly characterized as a claim invoking the protections of the Fourth Amendment and not the Eighth Amendment. Thus, the Court finds that Goffin's Eighth Amendment claim should be dismissed.

Goffin alleges some Fourteenth Amendment Due Process claims relating to the alleged use of excessive force during his arrest. The Supreme Court has made explicit "that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham,* 490 U.S. at 395. While the due process clause protects a pretrial detainee from the use of excessive force amounting to punishment, *Green v. Missouri*, 734 F. Supp. 2d 814, 840 (E.D. Mo. 2010) (citing *Graham*, 490 U.S. at 395), Goffin does not allege any excessive force outside of his arrest. Thus, Goffin's Fourteenth Amendment Due Process Clause claim fails as a matter of law.

E. State-Law Claims

In addition to his federal claims, Goffin alleges the following state-law claims: outrage, battery, negligence, and violations of the Arkansas Civil Rights Act. Having disposed of all of Goffin's federal claims, the Court declines to exercise supplemental jurisdiction over his state-law claims. *See* 28 U.S.C. § 1367(c)(3) (court may, *sua sponte*, decline to exercise supplemental jurisdiction over pendent state-law claims if it has dismissed all claims over which it had original jurisdiction); *Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004) (when all federal claims are eliminated before trial, balance of factors to be considered in deciding whether to exercise supplemental jurisdiction over pendent state-law claims typically militates against exercising jurisdiction) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Accordingly, the Court finds that Goffin's state-law claims should be dismissed without prejudice.

CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 48) should be and hereby is **GRANTED**. The Court finds that Ashcraft is

entitled to qualified immunity regarding Goffin's Fourth Amendment claim and that all federal claims against all Defendants should be **DISMISSED WITH PREJUDICE**. The Court finds that all state-law claims against all Defendants should be **DISMISSED WITHOUT PREJUDICE**. The Court will issue a Judgment of even date consistent with this Memorandum Opinion.

    **IT IS SO ORDERED**, this 23rd day of January, 2018.

                                      /s/ Susan O. Hickey
                                      Susan O. Hickey
                                      United States District Judge